# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES RALEIGH, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 4:21-CV-00044-MTS |
| DONALD A. DEGRANGE, M.D., | ) |
| Defendant. | ) |

## PLAINTIFF'S TRIAL BRIEF

NOW COMES the Plaintiff, JAMES RALEIGH, by and through his attorneys, SYREGELAS & KASMARICK, LLC, and for his Trial Brief, states as follows:

### STATEMENT OF FACTS

On January 21, 2019, Plaintiff James Raleigh underwent an L5-S1 decompression and fusion surgery performed by Defendant Dr. DeGrange at Mercy Hospital St. Louis. The surgery was to address lower back pain and bilateral radicular complaints, which in multiple pre-operative notes were described as worse and constant in the right leg and involving pain and occasional numbness and tingling on the left side just into the buttock which would come and go. The surgery involved bilateral decompression of his right and left nerve roots and fusion consisting of an anterior plate and posterior placement of two pedicle screws on the left side of Plaintiff's L5 and S1 vertebrae. Screws were not placed on the right side due to the patient's body habitus and the fact his right L5 vertebrae was already congenitally fused with his sacrum. Prior to the surgery Defendant DeGrange informed Plaintiff that within 90% certainty he would either his symptoms would either be better or significantly better with the

surgery and that he would return to work as a truck driver and hauler of livestock within 6 to 12 months.

While still admitted to Mercy Hospital post-operatively, Plaintiff James Raleigh reported near complete relief of his back and right sided complaints but immediately experienced and reported left hip and leg complaints, that were initially described as a pulling sensation in the back of his left leg.  In physical therapy sessions at the hospital, primarily consisting of ambulating with the assistance of a walker, he was described as favoring his left side and needing frequent breaks due to increased pain.  On post-operative day two his epidural catheter was removed and he reported significantly increased pain in his left hip/abdomen and leg. On post-operative day four he could not participate in his afternoon session of therapy due to the pain.

On the morning of post-operative day four, the anticipated date of discharge, and owing to these new symptoms reported by Plaintiff, Defendant Dr. deGrange ordered a CT scan specifically to check screw placement.  The CT scan was performed later that morning and Dr. DeGrange read the scan as showing the L5 pedicle screw laterally breaching the left side of the L5 vertebrae and by a nearby nerve.  Based on results, Dr. deGrange postponed Plaintiff's discharge in order to return to surgery on January 26, 2019, to attempt to reposition the L5 pedicle actually into the vertebral body.  The January 26, 2019, Operative Report documents that Dr. deGrange made multiple attempts to reposition the screw but it kept following the same path as originally replaced.  As a result, he removed both the L5 and S1 pedicle screws after concluding that the existing fusion was stable without them.

Following this second surgery Plaintiff continued to report significant pain and weakness in his left leg which did not exist before the surgery.  Under Dr. DeGrange's care he

attempted but failed to return to his prior work as a truck driver approximately one year following the surgery.  Dr. DeGrange continued Plaintiff of off work almost 18 months after surgery at which time he stated he had reached "maximum medical improvement" and returned him to work with a 30 lbs lifting restriction, limited bending, stooping or twisting at the waist, and intermittent position changes ("sit, stand and walk).  Owing to his ongoing pain Plaintiff continued treatment with another spine surgeon, Dr. Todd McCall who implanted a spinal cord stimulator in Plaintiff in December, 2022.

## LAW APPLICABLE TO CLAIM

"A statutory cause of action for damages against a health care provider for personal injury or death arising out of the rendering of or failure to render health care services is hereby created, replacing any such common law cause of action.  The elements of such cause of action are that the health care provider failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession and that such failure directly caused or contributed to cause the plaintiff's injury or death."  Mo. Rev. Stat. § 538.210.1 (2020).

## PLAINTIFF'S EXPERT TESTIMONY

Dr. Marc Levin is a board certified neurosurgeon on staff at Community Hospital in Munster, Indiana.  Dr. Levin's career practice has included performing the same surgical procedure at issue in this case and diagnosing and treating the injuries suffered by Plaintiff, thousand's of times.   Dr. Levin will testify that Dr. DeGrange deviated from the standard of care and was negligent in performing the January 21, 2019, in two main ways.  First, Dr. DeGrange was required to place to the pedicle screw approximately 15 degrees medially from the entry point into the pedicle whereas he actually placed the screw nearly straight or even

3

slightly laterally, causing the screw to breach the lateral side of the L5 vertebral body by approximately 15mm or more (the total length of the L5 screw was 45mm).  Dr. Levin will also testify that Dr. DeGrange deviated from the standard of care when he performed the surgery without access to O-Arm Navigation, an imaging modality that provides real time imaging in all three planes (rather than the two planes available with fluoroscopy).  Dr. DeGrange has blamed the misplaced screw on Plaintiff's "severe anatomical abnormalities" but in his deposition testimony acknowledged referring patients with such abnormalities to another institution in the area that had O-Arm imaging and further stated now that his own institution has O-Arm he would use it for cases like Mr. Raleigh's.  Dr. Levin's will testify that Dr. DeGrange was required to refer the patient to an institution with O-Arm and doing so would have facilitated and confirmed the correct placement of the L5 screw during the operation.

Finally, Dr. Levin will testify that these deviations which led to the misplacement of the pedicle screw caused injury to Plaintiff by compressing the adjacent lumbar nerve either by the screw itself or material such as bone and facia that was displaced by the screws breach of the vertebral cortex.  Dr. Levin further testified that the injury to Plaintiff's nerve has caused damages including Plaintiff's pain and suffering, disability from pain and weakness that prevents him from returning to his prior employment and limits him to part-time sedentary work, and finally future medical expenses including the cost of the second surgery and placement of the spinal cord stimulator.

## **PLAINTIFF'S DAMAGES**

Plaintiff intends to establish the following paid medical expenses proximately resulting from Defendant's negligence:

  Donald A. DeGrange MD LLC – 1/26/19 (2nd surgery):  $4,038.38

  Mercy Hospital St Louis – 1/25/19 – 1/28/19 (CT, 2nd surgery): $17,308.92

  OSF Healthcare- 9/6/22 – 12/12/22 (Spinal Cord Stimulator): $27,654.54

           Total Medical: $49,001.84

Exhibits used to summarize or support Plaintiff's medical expenses include Plaintiff's Medical Bills from Donald A. deGrange, MD LLC (Pltf-2), Mercy Hospital St. Louis (Pltf-6) and OSF Healthcare (Pltf-14).

Plaintiff also intends to establish past and future wage loss based on his 2018 gross income of $59,676, which was the last full year he worked prior to the surgeries in question. Dr. DeGrange estimated Plaintiff would be off work approximately 6-12 months following the surgery and under Dr. DeGrange's advice Plaintiff unsuccessfully attempted a return to his prior employment in December, 2019, failing due to his left lower extremity complaints.  He did not return to any employment until June 13, 2022 and his total 2022 income was $6,003. Based on his current hourly rate of $13.00 and average hours of 25 hours per week, he expects to realize gross income of approximately $17,000 per year in the future, beginning with 2023. Thus Plaintiff's wage loss claim will be substantially as follows:

 Past Wage Loss

  2020:  $59,676.00

  2021:  $59,676.00

  2022:  $53,673.00

  Total:  $173,025.00

 Future Wage Loss

  $59,676-$17,000 = $42,676 per year

5

Exhibits used to support Plaintiff's past and future wage loss include Plaintiff's Tax Returns (Pltf-25), United Community Bank Statements with Casey's Retail Direct Deposits (Pltf-30), Woodrum Automotive Pay Stubs (Pltf-31), CDC Life Tables (Pltf-27), and Medical Records of Dr. DeGrange (Pltf-1) as well as the testimony of Dr. Marc Levin.

Finally, for non-economic damages, Plaintiff will seek an amount not less than the statutory maximum set by Missouri law.

Respectfully submitted,

*/s/ Kyle Kasmarick*
_____
Kyle R. Kasmarick, *Pro Hac Vice*
Syregelas & Kasmarick, LLC
19 North Green Street
Chicago, Illinois 60607
(312) 243-0900
ARDC# 6296887

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served by the Court's electronic filing system on February 9, 2023, on the counsel of record listed below.

Brown and James PC
Peter F. Spataro, pspataro@bjpc.com
Joseph F. Callahan, jcallahan@bjpc.com
Bryce G. Pfalzgraf, bpfalzgraf@bjpc.com
800 Market Street, Suite 1100
St. Louis, Missouri  63101
Attorneys for Donald A. deGrange, M.D.

*/s/ Kyle Kasmarick*
_____
Kyle R. Kasmarick, *Pro Hac Vice*
Syregelas & Kasmarick, LLC
19 North Green Street
Chicago, Illinois 60607
(312) 243-0900
ARDC# 6296887
